

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340

**WILLIAM J. MARTINI**
  **JUDGE**

## LETTER OPINION

December 16, 2010

Ms. Judith H. Germano
Office of the US Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
*Attorney for Plaintiff*

Mr. Mark Gary Hough
66 Linwood Drive
Potters Green
Coventry, CV2 2PR
UK
*Pro Se Defendant*

  Re: *United States v. Mark Gary Hough*
    <u>Case No. 2:02-cr-00649-WJM-1</u>

Dear Litigants:

  This matter comes before the Court on the motion to withdraw the plea of guilty of *pro se* Defendant Mark Gary Hough ("Hough" or "Defendant") pursuant to Fed. R. Crim. P. 11(d). For the reasons stated below, the motion is **DENIED.**

## BACKGROUND

  On or about May 11, 1998, Defendant Mark Gary Hough, who is not a United States citizen, was deported from the United States after having been convicted of a crime. Four years later, on or about July 23, 2002, Defendant illegally re-entered the

United States in violation of Title 8, United States Code, Sections 1326(a) and (b)(2) to take his wife and two young children to Disneyland, California. He was charged by complaint nearly eight years ago, on August 23, 2002 (Docket No. 1), and then indicted on August 28, 2002 (Docket No. 7) for that illegal reentry. On or about October 18, 2002, Defendant moved to relieve his court-appointed counsel from the Federal Public Defender's Office; the court granted that motion and appointed new counsel for the Defendant. Trial was set to proceed before the Honorable Joseph A. Greenaway, Jr., on or about December 11, 2002.

     Defendant maintains that he never entered into the United States in an unlawful manner or with an illegal intent. During plea negotiations, the charge of illegal re-entry was dropped and Defendant was instead charged with making false statements to the government. This charge arose from a false statement made on a Form I-94 from the Immigration and Naturalization Service ("INS"). On that form, Defendant initially confessed that he checked the box representing that he had never been excluded, deported, or previously removed from the United States, which is not a true statement. On November 26, 2002, the Defendant entered a guilty plea for making these material false statements to the government in violation of 18 U.S.C. §1001. During his plea allocution, Defendant admitted that he knowingly lied to INS authorities when he filled out INS Form I-94 in seeking to enter the United States. Defendant acknowledged that he knowingly, intentionally and falsely reported on that form that he had never been excused, deported or previously removed from the United States. (11/25/02 Plea Hearing Transcript). Judge Greenaway provided a fulsome plea allocution to ensure Defendant understood the charges to which he was pleading guilty and the rights he was foregoing regarding a trial, appeal and subsequent motions. (*Id*.). In that plea hearing, Judge Greenaway also took great care to ensure that the decision to plead guilty and his willingness to plead was of Defendant's own accord. (*Id*.). Defendant acknowledged his guilt and Judge Greenaway accepted Defendant's application to plead guilty. (*Id*.).

     On February 5, 2003, Defendant was sentenced to time served and, among other things, was ordered to cooperate with INS. (Docket No. 25). Defendant was then deported. On July 24, 2004, Defendant filed a *pro se* letter that was treated as a motion to withdraw his guilty plea. (Docket No. 36). Hough's main argument in that letter was that he did not attempt to illegally re-enter the United States after having been removed in 1998. Judge Greenaway denied that motion on April 23, 2005 on the ground that Hough did not properly assert his innocence because the conviction and sentence from which he appeals was not for illegal re-entry, but for making a false statement to an INS official. (Document No. 39). Five years later, on May 18, 2010, Defendant filed yet another *pro se* motion, now pending before this Court, to withdraw his guilty plea. (Docket No. 40). This time, Hough asserts that he did not make false statements to an INS official and that he is innocent of the charge. It appears to this Court that the Third Circuit has already made a determination that Hough admitted that he had lied on his I-94 Form and that entered a

guilty plea knowingly and voluntarily. As such, Hough is precluded from bringing this second motion to withdraw a plea of guilty. Alternatively, even if the issue is not precluded and the matter is not moot, Hough's motion to withdraw his plea of guilty would still be denied for the reasons set forth below.

## ANALYSIS

The withdrawal of a guilty plea is "inherently in derogation of the public interest in finality and the orderly administration of justice." *Brady v. United States*, 397 U.S. 742, 748 (1970); *see also Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (withdrawal of a guilty plea undermines confidence in the integrity of our procedures, and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice") (*quoting United States v. Timmreck*, 441 U.S. 780, 784 (1979)).

"[A court] looks to three factors to evaluate a motion to withdraw: (1) whether the defendant asserts her innocence; (2) whether the government would be prejudiced by the withdrawal; and (3) the strength of the defendant's reason to withdraw the plea." *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001). A defendant may withdraw a plea of guilty after the court accepts the plea, but *before* it imposes a sentence, if the Defendant can show there is a "fair and just reason" for withdrawing a plea of guilty. Fed. R. Crim. P. 11(d)(2)(B). (*Emphasis added*.) "The burden of demonstrating a 'fair and just' reason falls on the defendant, and that burden is substantial." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003). A defendant's burden to show grounds for withdrawal in a *post-sentence* motion is heavier. *United States v. Morris*, 1999 U.S. Dist. LEXIS 13321, at *12 (E.D. Pa. August 31, 1999).

## DISCUSSION

Defendant Hough submitted this motion several years after being sentenced. He pleaded guilty in 2002 (Docket No. 22) and was sentenced in 2003 (Docket No. 25). He submitted this motion to withdraw his plea of guilty on May 18, 2010. (Docket No. 40). Thus, since this is a post-sentence motion, the Defendant has a heavier burden to establish the three prongs the Court looks to in order to evaluate a motion to withdraw a plea of guilty. *See Morris*, at *12. The three factors are addressed in turn.

### 1.     **Defendant Hough Properly Asserts His Innocence**

"[B]ald assertions of innocence are insufficient to permit a defendant to withdraw his guilty plea. Assertions of innocence must be buttressed by facts in the record that support a claimed defense. [And] [o]nce a defendant has pleaded guilty, he must then not only reassert innocence, but give sufficient reasons to explain why contradictory positions were taken before the district court and why permission should be given to withdraw the

3

guilty plea and reclaim the right to trial." *Jones*, 336 F.3d at 254. Defendant has met this first factor. He has meaningfully asserted his innocence and explained why contradictory positions were taken. In particular, he asserts that the I-94 Form was actually filled out by his wife while he was taking care of his young children, not by Hough. (Document No. 36 at 2). He asserts that he did not read nor sign the form and it was his wife that handed the form to the INS. (*Id*.). Hough also states that he was truthful when he was questioned by the INS during secondary inspection. (*Id*.).  He explains that at the time of the plea, he did not truly understand the nature of the charge, and further, that he needed to get back to the United Kingdom because his business was in trouble. (Document No. 40 at 29-30). He is the sole owner of T&H Exhibition Service, Ltd., which is located in the United Kingdom. (*Id*.). He further explained that he previously pleaded guilty to the charge of making false statements to the government because he believed pleading guilty was the quickest way to be released from the Passaic County Jail in order to return to the United Kingdom to save his business. (*Id*.). As such, Defendant Hough has satisfied this first prong.

   **2.**   **The Government Would Be Prejudiced By Withdrawal of Defendant's Plea**

  The second factor the Court must consider when faced with such a motion is whether the Government would be prejudiced by the withdrawal of a plea. *Brown*, 250 F.3d at 815. Withdrawal of a plea "almost invariably prejudices the government to some extent and wastes judicial resources." *United States v. Dyess*, 293 F. Supp.2d 675, 689 (S.D. W.Va. 2003). Thus, the Defendant need not show that the effects are nonexistent. *Id*. Here, however, the prejudice would be extreme. *See id.*, at 689-90 (concluding that the prejudice would be extreme since the Government would be required to mount a criminal trial five years after the indictment was handed down, with fading memories and loss of access to witnesses). Increased cost and inconvenience to the Government are grounds for finding prejudice from withdrawal of a guilty plea, as is the diminished memory of Government witnesses. *United States v. Golden,* 2001 U.S. Dist. LEXIS 15944, at *29 (E.D. Pa. July 31, 2001). Defendant contends that the Government would not be prejudiced given the fact the witness's for the Government are its own employees. (Docket No. 40 at 39(b)). However, the Government has sufficiently shown that it would be prejudiced by the withdrawal of the plea based on the fact that over eight years have passed since the date of the plea and since the time Defendant was sentenced and deported from the United States. (Document No. 41 at 3). Memories of what happened and what was said during plea negotiations have surely faded. Additionally, opening a case after eight years is certainly inconvenient and costly. Moreover, Defendant offers no other assurances to show that the Government would not be prejudiced. As such, the Defendant has not carried his burden to establish that the Government would be minimally prejudiced by the withdrawal of his plea.

### 3.     Defendant's Reasons for Withdrawal Are Arguably Weak

As to the third prong, that is, the strength of Defendant's reasons for withdrawal, Defendant's position is arguably weak. His primary argument is that but-for his attorney's failure to warn him of the possible deportation consequences and his ineffective assistance of counsel, he would not have pleaded guilty, but these claims lack merit. Defendant's other arguments are that he was coerced into entering the plea and he was under undue influence. These arguments will be addressed in turn.

### A.     Failure to Warn of Possible Deportation Claim

First, with respect to Defendant's argument that his counsel was ineffective by failing to inform him that he could be deported as the result of his conviction, the Third Circuit has not ruled on whether or not an attorney must inform his client of possible future immigration proceedings in order to comply with the Sixth Amendment. *See United States v. Nino*, 878 F.2d 101, 105 (3d Cir. 1989) (declining to decide "whether counsel's failure to advise a client about the deportation consequences of a guilty plea can constitute deficient representation absent special circumstances"). In the 2010 case of *Padilla v. Kentucky*, the Supreme Court ruled that defense counsel must always advise a non-citizen client of the deportation consequences of a guilty plea. *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). However, Hough cannot use the *Padilla* decision more than eight years later to challenge his 2002 conviction. This is because of another Supreme Court decision that announced that a "new rule" of constitutional criminal procedure does not apply retroactively to cases challenged on collateral review. *Teague v. Lane,* 489 U.S. 288, 310 (1989). Under *Teague*, "new constitutional rules" of criminal procedure are generally inapplicable to cases that have already become final. *Id*. at 311.

Moreover, a rule is "new" if it was not "dictated by precedent existing at the time the defendant's conviction became final." *Graham v. Collins*, 506 U.S. 461, 467 (1993); *see Teague*, 489 U.S. at 310. Neither the Third Circuit nor the Supreme Court have ever ruled on whether or not an attorney must make a client aware of possible future immigration proceedings in order to comply with the Sixth Amendment prior to the *Padilla* case. Thus, the 2010 *Padilla* decision requiring counsel to advise a non-citizen client of deportation consequences is a new constitutional rule and should not be applied retroactively to Plaintiff's 2002 plea of guilty and sentence.

### B.     Ineffective Assistance of Counsel Claim Generally

The test for ineffective assistance of counsel requires the petitioner to show that (1) counsel's performance was deficient and contained errors so serious as to deny the protections of the Sixth Amendment, and (2) the results of the proceedings would have been different, were it not for the errors of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). Thus, a petitioner must demonstrate both a breach of duty and prejudice suffered as a result of that breach. *See Nino*, 878 F.2d at 103-104.

Hough's ineffective assistance of counsel claims can be divided into two parts. First, Defendant argues that his attorney was deficient because of the attorney's failure to inform him that he could be deported based upon the commission of these crimes. (Document No. 40 at 8). Second, he argues that his counsel was deficient because his attorney coerced him into entering a plea of guilty. (*Id*. at 13).

As to the first prong of the *Strickland* test, with regards to Defendant's argument that counsel was deficient due to her failure to inform him that he could be deported, counsel's representation did not fall below an objective standard of reasonableness. A court "deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of a particular case, **viewed as of the time of counsel's conduct**." *Strickland*, 466 U.S. at 690. (*Emphasis added*). Accordingly, "in making litigation decisions, 'there is no general duty on the part of defense counsel to anticipate changes in the law.'" *Sistrunk v. Vaughn*, 96 F. 3d 666, 670 (3d Cir. 1996).

The second prong of the *Strickland* test was not met either. To prove ineffectiveness in the guilty plea context, Petitioner must demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). As *Padilla* recognized, "[s]urmounting *Strickland*'s high bar is never an easy task," and is particularly difficult for "this type of claim, [because] a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 130 S. Ct. at 1485.

Here, Defendant's wish to withdraw his guilty plea, and proceed to succeed at trial is dubious. The evidence against Defendant was strong. An INS Form I-94 was completed containing false information about whether he had ever been excused, deported or previously removed from the United States. He confessed to making this false statement and cooperated with the INS. Moreover, Defendant states that his main concern at the time of the plea was to get out of jail so that he could go back to the United Kingdom to save his failing business, T&H Exhibition Service, Ltd. (Document No. 40 at 13). If that was his main concern, under the circumstances and with the weight of the evidence against the Defendant, this Court concludes that it would not have been rational for him to wait for a trial and have his business fail. Additionally, the Court asked Hough if he understood that he may be deprived of valuable civil rights, to which he responded "Yes, sir." (11/25/02 Plea Hearing Transcript at 15.12-18), and he still decided to plead guilty. Lastly, the Court ensured that he was well aware of the fact that he faces the possibility of deportation, to which he understood and made no objection. (2/5/03 Sentencing Transcript at 7.20-25, 8.1-9, 10.1-10). Therefore, he cannot argue that but for the failure of his counsel to tell him this, he would not have entered into the plea bargain. There was no prejudice to Hough, and his claim fails.

### C.     Coercion and Undue Influence Claims

Next, with respect to Defendant's other reasons for entering a plea of guilty (he claims that because of the circumstances he was in, that he was under undue influence and was coerced to enter a plea of guilty), these claims are controverted by the record. Defendant explains that he entered a guilty plea due to fear and pressure. (Document No. 40 at 25). He complained of being attacked by dogs and officers' while being held at the Passaic County Jail. (*Id*. at 26). Additionally, Defendant contends that he needed to go back to the United Kingdom as soon as possible to save his failing business. He claims that his attorney knew that the Defendant needed to return to the United Kingdom for this reason and that he was promised by his attorney that in return for a guilty plea, the Defendant would receive "time served" and be placed on an immediate flight back to the United Kingdom. (*Id*. at 25). According to the Defendant, the only reason he pleaded guilty was because it became apparent to him that pleading guilty is what he needed to do in order to make it back to the United Kingdom in a timely manner. (*Id*. at 29-30). Thus, he claims he was coerced and under undue influence to enter a plea of guilty.

However, the record reflects otherwise. During his plea, while under oath, Defendant stated he had sufficient time to discuss the matter with his attorney (11/25/02 Plea Hearing Transcript at 3.7-9), that he was satisfied with her representation (*Id*. at 3.7-12)(the Court asked if he was satisfied with his attorney's representation, to which he responded "Absolutely"), that various guideline considerations were explained to him (*Id*. at 9.15-24, 10.1-8, 11.1-25, 12.1-6, 16.1-25, 17.1-20), that counsel had discussed and he understood his waiver of appeal (*Id.* at 4.1-11, 4.21-25, 5.1-3, 5.6-10, 5.14-25, 6.1-3, 13.10-17, 15.8-11, 17.21-24, 18.13-21), that he would be deprived of various civil rights (*Id*. at 15.12-18), that he was not coerced or threatened to enter the plea (Id. at 5.5-8, 9.1-6, 12.12-19, ), and that he entered the plea knowingly and voluntarily (*Id*. at 6.25, 7.1-4, 9.1-6, 19.3-8, 19.17-20, 20.4-19, 22.23-25, 23.1-2, 23.6-13). Although Defendant Hough has expressed what his motivations to enter a plea of guilty were, the allegation of coercion brought against his attorney and the Government of why he did so is just a naked allegation of wrongdoing, and one which is inconsistent with Defendant's prior representations in open court. Furthermore, Hough's contentions that the conditions of his incarceration and the pressure of saving his failing business amounted to undue influence and coercion are controverted by the record. As such, the third prong is not satisfied.

Therefore, the Court concludes based on the second and third factor and the heightened burden for this post-sentence motion to satisfy the three factors, that Defendant has not carried his burden to withdraw his plea of guilty.

Moreover, as previously mentioned, this is Defendant's second motion to withdraw his plea of guilty. Although Judge Greenaway denied the first motion because

of different factors and slightly different arguments, the same issues were addressed in the first motion that are presently before this Court. Thus, the issues have been precluded and the matter is moot from further review.

## CONCLUSION

For the reasons stated above, Defendant Mark Gary Hough's motion to withdraw plea of guilty pursuant to Fed. R. Crim. P. 11(d) is hereby **DENIED.** An appropriate order follows.

  /s/William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**